# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Charles Steele,
      Petitioner


     vs                            Case No. 1:02cv219
                                    (Spiegel, J.; Black, M.J.)


Michael Allen,
      Respondent

———————————————

## REPORT AND RECOMMENDATION

———————————————


      Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition,  respondent's return of writ and petitioner's traverse.   (Docs. 1, 11, 12).


### Procedural and Factual Background

      During his incarceration for a 1995 rape conviction, petitioner provided a DNA sample to be included in a DNA database known as CODIS (Combined DNA Identification System).   (Doc. 11 at 1; *State v. Steele,* 802 N.E.2d 1127, 1129 (Ohio Ct. App. 2003)).  Petitioner's DNA sample matched the DNA of a semen sample obtained from a victim who was raped on February 19, 1994. (*Id.*). After securing a search warrant, the police took a second DNA sample from petitioner which also matched the victim's semen sample.  (*Id.*).   On November 26, 2001, the Hamilton

County, Ohio grand jury indicted petitioner on two counts of kidnapping as defined in Ohio Rev. Code §§ 2905.01 (A) (2), 2905.01 (A)(4) and one count of rape as defined in Ohio Rev. Code § 2907.02(A)(2), each with firearm specifications. (Doc. 16, Ex. 1at 1).

While awaiting trial, petitioner filed a petition for a writ of habeas corpus in this Court. (Doc. 1).  As his claim for relief, petitioner argued that because his prosecution was barred by the applicable state statute of limitations, his incarceration was unconstitutional. (*Id.*). Petitioner implied that he was having difficulty having his claim heard in the state courts, asserting that his state habeas corpus petition presented pro se to the Supreme Court of Ohio was returned for failure to comply with the Court's procedural rules.  (Doc. 1, attachment).  On April 16, 2002, Magistrate Judge Jack Sherman, Jr. concluded that the federal petition was subject to summary dismissal under Rule 4 of the Rules Governing Sections 2254 Cases in the United States District Courts, 29 U.S.C. foll. § 2254, because petitioner failed to exhaust state remedies and intrusion into the ongoing state court proceeding was not justified at that time. (Doc. 2).

In his objections to the Magistrate Judge's Report and Recommendation, petitioner noted that he was unable to properly file his state habeas corpus petition because the jail lacked notary services. (Doc. 3 at 5).  The district court was troubled by this allegation and concluded that "the Magistrate Judge must hold an evidentiary hearing to determine the truth of Petitioner's allegations that the state supreme court will not consider his unnotarized pleadings and that the services of a notary public are unavailable to prisoners at the HCJC [Hamilton County Justice Center]." (Doc. 4 at 7).  The District Judge reversed the Magistrate Judge's recommendation and remanded the case. (*Id.*).

On August 7, 2002, Magistrate Judge Sherman ordered respondent to respond to allegations in the petition by filing a return of writ. (Doc. 5). On December 11, 2002, respondent filed a return of writ indicating that on October 22, 2002 petitioner had been convicted as charged and that an appeal of his convictions for rape and kidnapping was pending before the Ohio Court of Appeals.[1]  (Doc. 11 at 3).  Respondent asserted an exhaustion defense. (*Id.*).  Respondent also took issue with

---

[1] The state trial court sentenced petitioner to an aggregate sentence of twenty-three (23) to fifty (50) years of incarceration. (Doc. 11 at 2).

2

petitioner's complaint that the HCJC lacked notary services, indicating that staff members are commissioned as Notary Publics and notarize documents for inmates on a daily basis. (*Id.* at 4). Respondent provided copies of two documents notarized for petitioner. (*Id.*).

On May 18, 2004, the undersigned Magistrate Judge ordered respondent to update the record with documents from petitioner's direct appeal in the state courts. (Doc. 15).

The record, as supplemented, shows that petitioner, assisted by counsel, filed a timely appeal of his convictions to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error which are quoted verbatim:

> I. Steele's Constitutional Rights Under The Fifth And Fourteenth Amendments To The United States Constitution Were Violated By His Being Prosecuted For Rape and Kidnapping Beyond The Statute Of Limitations Prescribed By Ohio Revised Code 2901.13.

> II. The Court Committed Prejudicial Error In Refusing To Allow Defendant-Appellant To Represent Himself At Trial Of This Matter.

> III. The Court Erred In Allowing Into Evidence DNA Samples Obtained From Steele In 1995 and 2001 In Violation of His Fourth and Fourteenth Amendment Rights To The United States Constitution.

(Doc. 16, Ex. 1). On December 12, 2003, the Ohio Court of Appeals issued a decision overruling the assignments of error and affirming the judgment of the trial court. *See State v. Steele,* 802 N.E.2d 1127, 1129 (Ohio Ct. App. 2003).

Through counsel, petitioner further appealed the judgment to the Supreme Court of Ohio. (Doc. 16, Ex. 3). On May 26, 2004, the Supreme Court of Ohio denied leave to appeal. (Doc. 16).

## OPINION

3

**Petitioner is not entitled to habeas corpus relief based on his sole claim that the state statute of limitations was unconstitutionally applied.**

Since the status of this case has evolved from one involving a pretrial habeas corpus petition to a case where the state court process has run its course, as a preliminary matter, this Court re-evaluates whether petitioner has exhausted his state remedies and the need for an evidentiary hearing. Because petitioner has now pursued his statute of limitations claim through the state appeals process, respondent's exhaustion defense is no longer viable. Moreover, while any alleged problems with the HCJC's notary services and with petitioner's access to the Ohio Supreme Court as a pro se litigant without such services are indeed a legitimate concern, as the District Judge has expressed, they no longer appear relevant to this particular case because petitioner has had his claims considered in his direct appeal to the Ohio Court of Appeals and has pursued an appeal of that decision to the Supreme Court of Ohio. In any event, this Court notes that even in the absence of difficulties with notary services, the Supreme Court of Ohio would not have heard petitioner's statute of limitations claim in a habeas corpus proceeding because such claims are not cognizable in state habeas corpus. *Jennings v. Jackson,* 807 N.E.2d 361 (Ohio 2004) (and cases cited therein). Direct appeal is the appropriate remedy for a claim that the trial court lacked jurisdiction to convict petitioner due to the State's failure to prosecute within the applicable limitations period. *Id.* Because the issues of petitioner's alleged difficulties with notary services and access to Ohio Supreme Court review on a state petition for a writ of habeas corpus have been mooted by his direct appeal, and because petitioner has exhausted his state court remedies, this Court will proceed to address the merits of petitioner's claim without holding an evidentiary hearing.

As his sole ground for relief, petitioner asserts that the state violated his constitutional rights when it prosecuted him for rape and kidnapping beyond the original statute of limitations prescribed by Ohio Rev. Code § 2901.13(A)(1) by retroactively applying an amendment to that statute extending the limitations period. (Doc. 1).

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented

4

in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court *de novo,* without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

The Ohio Court of Appeals addressed petitioner's statute of limitations claim, as follows:

In his first assignment of error, he argues that the state violated his constitutional rights by prosecuting him for rape and kidnapping beyond the statute of limitations prescribed by R.C. 2901.13(A)(1). He argues that, at the time of the offense in 1994, the statute of limitations was six years, but that he was not indicted until November 26, 2001, over a year after that six-year period had expired. This assignment of error is not well taken.

On March 9, 1999, the legislature amended R.C. 2901.13 to extend the time in which a defendant may be brought to trial for some offenses, including rape and kidnapping, from six to twenty years. The legislature stated that the amendment to R.C. 2901.13 applied to an offense committed prior to the effective date of the amendment if prosecution for the offense was not barred under R.C. 2901.13 as it existed on the day prior to the effective date. *State v. Crooks*, 152 Ohio App.3d 294, 2003-Ohio-1546, 787 N.E.2d 678, ¶ 11; *State v. Barker*, 6th Dist. No. L-01-1290, 2003-Ohio-5417, 2003 WL 22319572, ¶ 15. Because the six-year statute of limitations that existed at the time of the offense in 1994 had not yet expired by March 9, 1999, the effective date of the amendment, the new twenty-year statute of limitations applied to Steele's prosecution.

Steele argues that the retroactive application of this amendment violated the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution. This court has already addressed this issue in *Crooks*, *supra*. In that case, we specifically held that the legislature had expressed a clear intent that the amendment to R.C. 2901.13 was to be applied retroactively and that the amendment was remedial. Therefore, the retroactive application of R.C. 2901.13 extending the statute of limitations did not violate the prohibition against retroactive laws. Id. at ¶ 9-14. Consequently, the application of the twenty-year statute of limitations to Steele's prosecution did not violate his rights.

We note that our holding is not changed by the decision of the U.S. Supreme Court in *Stogner v. California* (2003), --- U.S. ----, 123 S.Ct. 2446, 156 L.Ed.2d 544, which was issued after the parties submitted their briefs in the present case. In *Stogner*, the court held that a California law

6

that permitted resurrection of otherwise time-barred criminal prosecutions violated the provision in the United States Constitution against ex post fact laws. Id. We acknowledge that the category of retroactive laws under the Ohio Constitution is far broader than the category of ex post facto laws under the United States Constitution. *State ex rel. Corrigan v. Barnes* (1982), 3 Ohio App.3d 40, 44, 3 OBR 43, 443 N.E.2d 1034; *State v. Gonyer* (June 26, 1998), 6th Dist. No. WD-97-062, 1998 WL 352293; *State v. Goode* (Mar. 27, 1998), 2d Dist. No. 97-CA-14, 1998 WL 404026. See, also, *State v. Cook* (1998), 83 Ohio St.3d 404, 410-423, 700 N.E.2d 570. Nevertheless, *Stogner* is distinguishable.

The California statute in that case was enacted after the existing limitations period had expired. *Stogner*, supra. The court stated that "to resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a currently existing conclusive presumption forbidding prosecution, and thereby to permit conviction on a quantum of evidence where that quantum, at the time the new law is enacted, would have been legally insufficient." Id.

The court noted that courts have consistently distinguished extensions of unexpired statutes of limitation from situations where the statute of limitations has expired. It also specifically stated that its holding did not affect extensions of unexpired statutes of limitation. Id. Because this case involves the extension of an unexpired statute of limitations, not the resurrection of an expired one, Stogner by its own language does not apply. Accordingly, we overrule Steele's first assignment of error.

*State v. Steele,* 802 N.E.2d at 1129-1130.

There is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," based on the principle that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 945 (1997) (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 265 (1994)). The presumption is applied unless the legislature has clearly manifested its intent to the contrary. *Id.*

"[T]he antiretroactivity principle finds expression in several provisions of our Constitution," including the *Ex Post Facto* Clause which "flatly prohibits retroactive

7

application of penal legislation." *Landgraf,* 511 U.S. at 266. Article 1, Section 10, of the Constitution which is directed to the state legislatures provides, in pertinent part, "that no state shall pass any ex post facto law." Legislative acts which implicate the *Ex Post Facto* Clause include:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Stogner v. California*, 123 S.Ct. 2446, 2450 (2003) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 390 (1798) (opinion of Chase, J.)).[2] The *Ex Post Facto* Clause ensures that individuals have "fair warning" about the effects of criminal statutes so that if they wish they can preserve exculpatory evidence. *Weaver v. Graham,* 450 U.S. 24, 28-29 (1981); *see Stogner*, 123 S.Ct. at 2450. It also prevents legislatures from passing "arbitrary and potentially vindictive legislation," misusing the political process to punish past behavior of specific private citizens or groups. *Weaver,* 450 U.S. at 28-29; *Landgraf,* 511 U.S. at 267 n. 20. The Clause preserves the separation of powers by recognizing that "it is the judicial system, rather than the legislative process, that is best equipped to identify past wrongdoers." *Landgraf,* 511 U.S. at 267 n. 20 (quoting *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 513-514 (1989)); *see Stogner*, 123 S.Ct.

---

[2]The meaning of the clause has been alternatively summarized by the United States Supreme Court as follows: "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." *Collins v. Youngblood,* 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). This formulation omits the fourth category of changes to "rules of evidence" apparently to make clear that the clause does not prohibit the application of new rules of evidence in criminal proceedings for crimes committed before the changes. *Id.* at 43 n.3. In *Stogner,* the United States Supreme Court indicates that this fourth category is still viable and includes laws that reduce "the quantum of evidence required to convict." *Stogner*, 123 S.Ct. at 2451(quoting *Carmell v. Texas*, 529 U.S.513, 532 (2000)).

at 2450.

Statutes of limitations serve some of the same interests as the *Ex Post Facto* Clause.

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

*Toussie v. United States*, 397 U.S. 112, 114-115 (1970). By establishing a time period after which "there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced," statutes of limitations provide predictability. *United States v. Marion,* 404 U.S. 307, 322 (1971).

In *Stogner v. California*, 123 S.Ct. 2446, 2450 (2003), the United States Supreme Court considered whether a retroactive change in California's criminal statute of limitations violated the *Ex Post Facto* Clause. In 1998, a California grand jury indicted Marion Stogner for sex-related child abuse committed between 1955 and 1973. 123 S.Ct. at 2449. The statute of limitations at the time of the crimes was three years, but in 1993 California enacted a new criminal statute of limitations which permitted prosecution for crimes within one year of the victim's report of abuse to police where there was independent evidence to corroborate the victim's allegations. *Id.* The new statute authorized prosecutions where the original statute of limitations had expired. *Id.* The United States Supreme Court determined that two features of the new statute "produce the kind of retroactivity that the Constitution forbids." *Id.* First, the statute authorized criminal prosecutions that had been time-barred. Second, the statute was enacted after the expiration of the limitations period for prosecuting Stogner's offenses. *Id.*

In reaching this conclusion, the Court examined the "nature of the harms" that the new law created, whether the law fit within the four classes of cases set forth in *Calder v. Bull*, and the views of numerous authorities. *Id.* at 2449-2455. The Court determined

9

that the new statute threatened the kinds of harm that the *Ex Post Facto* Clause seeks to avoid, including depriving the accused of fair warning and risking arbitrary and vindictive legislation. *Id.* at 2449-2450. Finding that the California statute fell into *Calder's* second category, the Court explained:

> After (but not before) the original statute of limitations had expired, a party such as Stogner was not "liable to any punishment." California's new statute therefore "aggravated" Stogner's alleged crime, or made it "greater than it was, when committed," in the sense that, and to the extent that, it "inflicted punishment" for past criminal conduct that (when the new law was enacted) did not trigger any such liability.

*Id.* at 2451. The Court noted that because a statute of limitations means that after a certain time "no quantum of evidence is sufficient to convict," the new law could be interpreted as altering the rules of evidence necessary to convict, thereby also possibly falling into *Calder's* fourth category. *Id.* at 2452. Finally, the Court relied on "numerous legislators, courts, and commentators [who] have long believed it well settled that the *Ex Post Facto* Clause forbids resurrection of a time-barred prosecution." *Id.*

In its discussion of authorities, the United States Supreme Court distinguished statutes which extend unexpired statute of limitations versus those that revive expired statutes. The *Stogner* Court indicated that courts have upheld extensions of unexpired statutes of limitations by saying that the extension is not *ex post facto* if the prior limitations period has not expired. *Id.* at 2453. The *Stogner* Court specifically noted that its holding does not affect laws which extend unexpired statutes of limitations. *Id.* The Court traced this distinction back to the Reconstruction Congress of 1867, drafters of the Fourteenth Amendment, who rejected a bill that would have revived time-barred prosecutions for treason as *ex post facto*, but ultimately passed a law extending unexpired limitations periods. *Id.* at 2452-2453.

Judge Learned Hand described the distinction some seventy-five years ago:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is one, it does not shock us to have it extended beyond the time

10

first set, or, if it does, the stake forgives it.

*Falter v. United States*, 23 F.2d 420, 425-426 (2nd Cir.) (cited in *Stogner*, 123 S.Ct. at 2449), *cert. denied*, 277 U.S. 590 (1928).

In this case, the petitioner was indicted in 2001 for crimes committed in 1994. Although at the time of his offense the statute of limitations was six years, in 1999 the Ohio legislature amended Ohio Rev. Code § 2901.13, increasing the limitations period to twenty years. *Steele,* 802 N.E.2d at 1129. The legislature specified that the amendment was to apply retroactively, i.e., to an offense committed before its enactment, as long as the offense was not time-barred on the day prior to its effective date.[3] *Id.* A determination of the constitutionality of the 1999 amendment as it applies to this case turns on whether the amendment is "a permissible 'extension' statute of limitations, a statute enacted before the applicable statute of limitations has run and which extends the time to file a criminal complaint" or whether the amendment is "an impermissible 'revival' statute, a statute passed after an already expired statute of limitations which revives the right to file a statutorily barred criminal action." *See People v. Superior Court,* 116 Cal.App.4th 1192, 1195, 10 Cal.Rptr.3d 893, 894 (Ca. Ct. App. 2004). Since in 1999, when the amendment was enacted, petitioner had approximately one year left before the original statute of limitations had expired, the amendment served to extend, as opposed to revive, the original statute of limitations. Accordingly, the amendment does not violate the *Ex Post Facto* Clause.[4]

By extending the limitations period before the original statute of limitations had run, the Ohio amendment provided petitioner timely notice that a prosecution could still ensue, enabling petitioner to preserve exculpatory evidence. There is no indication that the amendment at issue grew out of a need for retribution or vindictive motives. Instead,

---

[3]Section 3 of H.B. 49 amending Ohio Rev. Code 2901.13 specifies that the amendment "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act." *State v. Crooks,* 787 N.E.2d 678, 682 (Oh. Ct. App. 2003).

[4]Petitioner's assertion that the Ohio amendment retroactively alters the rules of evidence falling into the fourth *Calder* category does not change this result. (Doc. 14 at 3). The *Stogner* Court acknowledged that a new statute of limitations may indeed have that effect, 123 S.Ct. at 2452, but excluded extensions of statutes of limitations from its holding that a retroactive amendment to a statute of limitations violates the *Ex Post Facto* Clause.

the amendment enlarged the time for prosecution to accommodate new technology involving the testing and preservation of DNA evidence that the state legislature believed to be reliable and relevant. *Crooks,* 787 N.E.2d at 683. For these reasons, the Ohio amendment did not threaten "the kinds of harm that the *Ex Post Facto* Clause seeks to avoid." *Stogner,* 123 S.Ct. at 2449.

Accordingly, petitioner has not demonstrated that the state court's adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of *Stogner* or any other clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.).

The state court decision in this case rested exclusively on the Federal and State *Ex Post Facto* Clauses, not on the Due Process Clause or the Equal Protection Clause.[5] *Steele,* 802 N.E. 2d at 1129-1130. To the extent that petitioner now relies on the Due Process Clause and the Equal Protection Clause in support of his claim for relief, he has failed to demonstrate that application of the amended statute of limitations to him violates either clause. (*See* Doc. 1 at 2).

The Due Process Clause preserves the interests of fair notice and repose that may be jeopardized by retroactive laws. *Landgraf,* 511 U.S. at 266; *see State v. Martin,* No. 2003-529, 2004 WL 1191052, at *2 (N.H. June 1, 2004) (citing *State v. Martin*, 643 A.2d 946, 948-949 (N.H. 1994)). To meet due process requirements, legislation must be "supported by a legitimate legislative purpose furthered by rational means." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729 (1984); *see United States v. Reynard,* 220 F.Supp. 2d 1142, 1156 (S.D.Cal. 2002); *Thompson v. Perryman*, No. 98 C 1596, 1998 WL 473471, at *7 (N.D. Ill. Aug. 7, 1998). With respect to retroactive laws, due process requires an independent rationale for retroactivity. *Reynard,* 220 F.Supp. 2d at 1156 (citing *Pension Benefit*, 467 U.S. at 729). The state legislature decided to apply the longer statute of limitations to crimes committed before its

---

[5]Although there is a substantial argument that petitioner did not fairly present his due process and equal protection claims to the state courts and has therefore waived them on habeas corpus review, see *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S.478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), this Court briefly considers the claims because respondent did not raise a waiver defense.

enactment to further the state's interest in punishing criminals and protecting its citizens from such perpetrators. With the advent of new technology for DNA testing and preservation, convictions for such older crimes could be obtained more reliably than before. Therefore, extending the statute of limitations to crimes committed before the enactment of the amendment is a rational means of furthering those legitimate state interests.

The Due Process Clause has also been recognized as having "a limited role to play in protecting against oppressive delay," but only when petitioner is prejudiced by the delay and the prosecution acts recklessly to gain a tactical advantage over the accused. *United States v. Lovasco,* 431 U.S. 783, 789, 796 n.17 (1977); *see United States v. Marion,* 404 U.S. 307, 324 (1971); *United States v. Brown,* 959 F.2d 63, 66 (6th Cir. 1992). In this case, there is no evidence of either. Petitioner does not allege that the prosecution's delay in bringing the case hampered his ability to mount a defense due to lost witnesses or the dimming of memories or that the prosecution engaged in any misconduct.

The Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Richland Bookman, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.), *cert. denied,* 537 U.S. 823 (2002). "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage" the constitutionality of the law at issue is presumed and "require[s] only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976). Petitioner fails to explain what classification the amended statute draws which he deems objectionable under the Equal Protection Clause. Assuming, *arguendo*, that the classification at issue is persons prosecuted under the original statute of limitations versus persons prosecuted under the amended and extended statute of limitations, that classification is rationally related to the state's interest in prosecuting perpetrators of serious crimes only when reliable and probative evidence exists, specifically DNA evidence.

In conclusion, regardless of the constitutional source, petitioner is not entitled to habeas corpus relief with respect to his claim that the retroactive application of the amendment to Ohio's statute of limitations violates his constitutional rights

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc.

13

1) be DENIED with prejudice.

2.   A certificate of appealability should not issue with respect to petitioner's claim for relief which this Court has considered on the merits, because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  Petitioner has not shown that reasonable jurists could debate whether this claim should have been resolved in a different manner or that the issue presented was "adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  _August 27, 2004_                          _s/Timothy S. Black_____

hr                                                                    Timothy S. Black

J:\ROSENBEH\2254(2004)\02-219expost.wpd          United States Magistrate Judge


14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Charles Steele,
     Petitioner


     vs                                Case No. 1:02cv219
                                       (Spiegel, J.; Black, M.J.)

Michael Allen,
     Respondent

_____

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

15